UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **WILLIAM SOLER JUSTICE, Plaintiff, v. AARON BELANGER and ERIC BARBARO, Defendants.** | | **Civil Action No. 23-cv-00308-SE-AJ** |

## DECLARATION OF WANDA DURYEA IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**1.** I, Wanda Duryea, submit this Declaration in support of Plaintiff William Soler Justice's Opposition to Defendants' Motion for Summary Judgment. I served as William Soler Justice's patient advocate period of April through December 2020. I was first appointed as h rdian in March 2021. Eric Hansmeier of the Office of Public Guardian of New Hampshire (OPG-NH) served as William's legal guardian during the relevant events of April through December 2020. I have personal knowledge of the facts set forth in this Declaration, based on my direct involvement as patient advocate, my review of documents produced in this litigation, and my observations during the relevant time period.

**2.** William Soler Justice is civilly committed under RSA 171-B. He has not been criminally convicted. He is housed at the Secure Psychiatric Unit (SPU), which is located within the New Hampshire State Prison for Men in Concord, New Hampshire. His commitment is civil in nature, not punitive.

**3.** The SPU is organized into three wards reflecting different levels of care and restriction. H Ward is Assisted Care Status, the least restrictive level. F Ward is Supervised Care Status, an intermediate level of restriction. E Ward is Acute Care Status, the most restrictive level, involving near-total isolation and approximately 23 hours per day in lockdown.

**4.** Prior to April 9, 2020, William Soler Justice was housed on H Ward — Assisted Care Status — the least restrictive ward within the SPU. He had achieved this placement through demonstrated clinical stability and compliance with treatment expectations.

**5.** William Soler Justice suffers from Schizophrenia, paranoid type. He also has Type 2 diabetes, with a documented episode of low blood sugar occurring on April 9, 2019. He suffers from morbid obesity, with a body mass index (BMI) of approximately 42 to 43, and stands 6 feet 7 inches tall with a pre-transfer baseline weight of approximately 388 pounds as of March 9, 2020. William does not have a cardiac condition or heart disease.

**6.** William Soler Justice suffers from anosognosia — a neurological symptom of his Schizophrenia, paranoid type, in which a person lacks awareness of their own mental illness and its symptoms. Anosognosia is not willful non-compliance; it is a clinical feature of his diagnosis. Because of anosognosia, William is unable to fully self-advocate or recognize when institutional actions are harmful to him. This condition makes the institutional protections afforded to civilly committed persons especially critical, and it places a heightened duty of care upon those who supervise him.

**7.** On the morning of April 9, 2020, William Soler Justice's treatment team held its regular morning meeting. Based on my knowledge of events and review of documents produced in this litigation, William's behavior was not flagged as dangerous at that morning meeting. No clinical basis for emergency ward transfer was identified or documented.

**8.** Approximately one to two hours after the morning treatment team meeting on April 9, 2020, William had a verbal exchange in the hallway with Corrections Officers Wrenn and Belanger. This exchange involved William asking Officer Belanger about his sister. The characterization of this verbal exchange as William "Asking Belanger About His Sister" is drawn from Christine O'Connor's own written description of the incident in her July 6, 2020 memorandum (Exhibit L). The exchange was verbal only; no physical altercation occurred.

**9.** Within hours of the verbal exchange described in the preceding paragraph, Defendants Aaron Belanger and Eric Barbaro transferred William Soler Justice from H Ward (Assisted Care Status — least restrictive) to E Ward (Acute Care Status — most restrictive). No clinical assessment preceded the transfer. No documented clinical emergency justified the transfer. The transfer was a corrections decision, not a clinical one, and was effectuated by correctional officers, not by clinical staff.

**10.** E Ward at the SPU subjects residents to near-total isolation and approximately 23 hours per day in lockdown. In protest of the conditions of his confinement on E Ward, William initiated a hunger strike. The conditions

on E Ward included inadequate nutrition and broken showers, as documented in the exhibit record.

**11.** William Soler Justice was confined on E Ward and subsequently F Ward for approximately 15 days total before returning to H Ward on approximately April 24, 2020. The step-down progression was: E Ward, then to F Ward Room 17 (as documented in Exhibit J dated April 23, 2020), and then to H Ward. His confinement on the most restrictive wards thus spanned from April 9 through approximately April 24, 2020.

**12.** William's medical records for April 9, 2020 — the date of his transfer — record virtually all vital signs as NA: blood pressure NA/NA, temperature NA, pulse NA, oxygen saturation NA, and weight NA. Only respirations (16) were recorded. This near-total absence of documented vitals on the transfer date is inconsistent with a clinically monitored or clinically driven transfer, and supports the conclusion that the transfer was a corrections decision rather than a clinical one.

**13.** In contrast to the absence of vitals on April 9, 2020, subsequent medical records show significantly elevated readings in the days following the transfer. On April 14, 2020, William's blood pressure was 137/89 and his pulse was 114 — a tachycardic reading substantially elevated above his baseline pulse rate of approximately 77 to 90. On April 15, 2020, his blood pressure was 136/90 and his pulse was 107. These elevated vital signs, recorded five to six days after the transfer to E Ward, are consistent with acute physiological stress caused by the conditions of his confinement.

**14.** William's pre-transfer weight, as recorded on March 9, 2020, was approximately 388 pounds. His weight recorded on April 14, 2020 was 366 pounds — a loss of approximately 22 pounds over approximately five weeks. This 22-pound weight loss is consistent with the hunger strike William conducted in protest of his conditions on E Ward and with inadequate nutrition during E Ward confinement.

**15.** Exhibit I is an SPU Resident Request Slip dated April 9, 2020, in which William Soler Justice wrote to SPU Captain Scott Marshall requesting preservation of the hallway audio recording of his verbal exchange with Corrections Officers Wrenn and Belanger that occurred on that date. I am familiar with this document from review of materials produced in this litigation. The hallway audio recording referenced in William's request was never produced. Its non-production constitutes potential spoliation of evidence.

**16.** Exhibit J is an SPU Resident Request Slip dated April 23, 2020, authored by William Soler Justice while he was housed on F Ward, Room 17. In that request, William asked Officer Belanger to return his personal journal — described as a "black & white composition notebook" — which William stated housed his most intimate thoughts. Officer Belanger's written response, dated April 28, 2020, states that William has all property that was removed from his cell on H Ward, that Belanger does not have anything else, and that William's cell was very messy when he was moved. William's personal journal was never returned. Its non-return constitutes potential spoliation of evidence.

**17.** Exhibit K is a letter dated June 3, 2020, written by William Soler Justice to Probate Judge Moran. In that letter, William described his conditions on E Ward as "23 hrs. a day lockdown" and characterized his confinement as "Involuntary Seclusion." I am familiar with this document from review of materials produced in this litigation.

**18.** Exhibit L is a memorandum dated July 6, 2020, authored by Christine O'Connor, in which O'Connor characterizes the April 9, 2020 hallway incident as William "Asking Belanger About His Sister." This characterization — drawn from O'Connor's own words — confirms that the predicate for William's transfer from H Ward to E Ward was a verbal exchange involving William asking a question about Officer Belanger's family member, not any threat of violence or clinical emergency.

**19.** Exhibit M documents a retaliatory threat made by Christine O'Connor in or around July through August 2020, in which O'Connor indicated that William's eligibility for placement at New Hampshire Hospital (NHH) — a less restrictive and more therapeutic setting — could be jeopardized by his conduct and by his advocate's conduct. This threat constitutes evidence of retaliatory motive for the institutional actions taken against William.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

*Declaration of Wanda Duryea - Continued*

20. Exhibit O consists of documents produced by Defendants during discovery in this action, including the original production, the original privilege log, the July 9, 2026 supplemental-production transmittal, the supplemental privilege log, and supplemental unredacted versions of specified Bates-stamped documents. I received or reviewed these materials in connection with my advocacy on behalf of William Soler Justice and maintained copies among the records I reviewed concerning this litigation. The documents attached as Exhibit O are true and correct copies of the discovery materials I reviewed, except that personal telephone numbers are redacted in the public filing copy.

Exhibit O includes documents bearing Bates numbers DOC-000008 through DOC-000032. The produced records contain communications concerning William's telephone calls with me, three-way calls, requests to pull or listen to telephone calls, the possible restriction of telephone contact, and the possible effect of advocacy activity on William's privileges or prospects for transfer to New Hampshire Hospital. During the events described in those records, I served as William's patient advocate, not his legal guardian. Eric Hansmeier of the Office of Public Guardian served as William's legal guardian during the relevant 2020 period.

The July 9, 2026 supplemental transmittal states that Defendants supplied unredacted copies of DOC-000013 through DOC-000014 and DOC-000028 through DOC-000030, while continuing to assert privilege as to DOC-000032. DOC-000030 is part of the May 5-7, 2020 request-slip email chain; DOC-000031 is the continuation page of that chain; and DOC-000032 is a separate April 30, 2020 email titled 'following up about puling phone records.'

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

*Declaration of Wanda Duryea - Continued*

The produced communications support my understanding that SPU personnel were aware William and I were challenging conditions of confinement and pursuing legal remedies. Although the records do not expressly state that personnel knew the contents of a future federal civil-rights complaint, the documented discussions about reviewing calls, obtaining telephone records, advocacy-related communications, possible contact restrictions, and consultation with counsel support an inference that institutional personnel were aware William was pursuing legal and administrative challenges concerning his treatment and confinement.

21. It is my understanding, based on clinical documentation in this case, that William Soler Justice holds a fixed belief that Dr. Wendy Martin allowed another person to impersonate her at the SPU. This belief has been assessed by clinicians as a fixed delusion - a symptom of his Schizophrenia, paranoid type - and is not evidence of dangerousness. It is a clinical presentation of his diagnosed mental illness.

22. I have reviewed the documents attached as Plaintiff's Exhibit E, titled Disability Rights Center-NH v. Hanks, No. 1:18-cv-00160-LM (D.N.H.). Exhibit E contains true and correct copies, reproduced in relevant part, of publicly available federal court records, including the Court's April 19, 2018 Preliminary Injunction (Doc. 13, 2018 WL 2220859) and the August 29, 2018 Judgment (Doc. 20). The quoted preliminary-injunction language identifies Phillip Borcuk, referred to as P.B., as an inmate with mental illness. The corrected Exhibit E uses that status and does not characterize Mr. Borcuk as civilly committed. During my advocacy on behalf of William Soler Justice, I obtained and reviewed these records from public court sources. The documents attached as Exhibit E are true and correct copies of the court records I reviewed.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

*Declaration of Wanda Duryea - Continued*

23. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: August 22, 2026

*/s/ Wanda Duryea*

**Wanda Duryea**

Patient Advocate (2018 through February 2021)

Legal Guardian (appointed March 2021)

William Soler Justice