**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **WILLIAM SOLER JUSTICE, Plaintiff, v. AARON BELANGER and ERIC BARBARO, Defendants.** | **Civil Action No. 23-cv-00308-SE-AJ** |

# PLAINTIFF'S EXHIBIT A

---

**N.H. Advisory Committee to the U.S. Commission on Civil Rights**

***Solitary Confinement in New Hampshire***

April 27, 2021

**Re:** Secure Psychiatric Unit as “a highly controlled, solitary-confinement environment, where security concerns must take precedent to clinical decisions”; Recommendation to Transfer SPU Oversight to DHHS

*(United States Government Publication — Public Domain — Reproduced in Relevant Part)*

**Authentication:** *See* Preliminary Statement § A; Declaration of Wanda Duryea, ¶ 3

---

***NOTE ON SIGNIFICANCE***

---

*This report was adopted unanimously by the New Hampshire Advisory Committee to the U.S. Commission on Civil Rights on February 8, 2021, and published on April 27, 2021. It was*

*authored based on public hearings held July 20, 2020; August 17, 2020; September 21, 2020; and December 9, 2020 — during the period of William Soler Justice's confinement on E Ward following his April 9, 2020 transfer.*

*The report is relevant to the instant case for three independent reasons: (1) it provides the legal and institutional standard against which Defendants' conduct on April 9, 2020 is measured; (2) it corroborates Plaintiff's account of SPU conditions including isolation, shower access, and lack of clinical independence; and (3) it documents that the problems Plaintiff experienced — security decisions overriding clinical judgment, absence of DHHS oversight, and the punitive character of the SPU — were not isolated incidents but recognized statewide civil rights failures that had been publicly documented by a federal civil rights body.*

***NOTABLE:*** *Wanda Duryea — who served as William Soler Justice's patient advocate during the April 9, 2020 events and is the declarant in this case — is cited in footnote 6 of this very report for her Concord Monitor op-ed co-authored with Beatrice Coulter, RN: "Our Turn: It's Time to Bring Transparency to the Department of Corrections," Concord Monitor, July 4, 2020.*

---

## REPORT IDENTIFICATION

| | |
|---|---|
| **Full Title:** | ***Solitary Confinement in New Hampshire*** |
| Issuing Body: | New Hampshire Advisory Committee to the U.S. Commission on Civil Rights |
| Date Adopted: | February 8, 2021 (unanimous vote) |
| Date Published: | April 27, 2021 |
| Committee Chair: | JerriAnne E. Boggis, Portsmouth |
| Committee Vice Chair: | Barbara J. Jago, Bedford |
| Project Leader: | Jason P. Sorens, Hanover |
| Intern: | Caitlin Mello (Commission intern, project leadership) |
| Public Hearings: | July 20, 2020; August 17, 2020; September 21, 2020; December 9, 2020 |
| Legal Basis: | 45 C.F.R. § 703.3; 42 U.S.C. § 1975(a) |

| **Full Title:** | ***Solitary Confinement in New Hampshire*** |
| --- | --- |
| Publication Status: | United States Government publication — public domain under 17 U.S.C. § 105 |

Commissioner Helen Hanks, Commissioner of the New Hampshire Department of Corrections, is specifically recognized in the report's Acknowledgements section for "the volume of information she provided to the Committee, and her responsiveness to the Committee's questions on this topic."

## PART II

## KEY FINDING — THE SPU AS A SOLITARY-CONFINEMENT ENVIRONMENT

Report p. 7 — Section: Policies for Solitary Confinement in New Hampshire: Secure Psychiatric Unit (SPU)

---

— Verbatim Reproduction —

---

The following passage is reproduced verbatim from the report (p. 7):

"The Secure Psychiatric Unit has been the subject of multiple lawsuits and consent decrees. At present, the facility, which houses the civilly committed, those found not guilty by reason of insanity, and convicted inmates being treated for serious mental illness, is under the jurisdiction of the New Hampshire Department of Corrections rather than the New Hampshire Department of Health and Human Services and is not accredited for mental health services. The problem of the jurisdiction transfer has been highlighted by numerous social service professionals over the last forty years, when the psychiatric unit was first moved to the New Hampshire State Prison for Men in Concord. Top state officials, including the Commissioner of Corrections, favor moving the

Secure Psychiatric Unit to the New Hampshire Department of Health and Human Services and seeking accreditation from the medical board.

There are also numerous inconveniences associated with housing psychiatric patients in the same building with correctional inmates, including, as already mentioned, disruptions to visitation and to proper administration of medicines. Moreover, the Secure Psychiatric Unit is a highly controlled, solitary-confinement environment, where security concerns must take precedent to clinical decisions. The presence of correctional officers, who are trained to work with individuals who are incarcerated, could be dehumanizing to those seeking mental health services. This setting may not be suitable for most patients."

*N.H. Advisory Committee to the U.S. Commission on Civil Rights, Solitary Confinement in New Hampshire, at 7 (Apr. 27, 2021).*

## PART III

## KEY FINDING — CIVILLY COMMITTED INDIVIDUALS IN A SOLITARY-CONFINEMENT SETTING

Report p. 10 — Section: Civil Rights Implications: Disability Status

The following passage is reproduced verbatim from the report (p. 10):

"Solitary confinement has a particularly negative effect on those suffering from mental health disabilities. Since the Secure Psychiatric Unit is housed on the same campus as the correctional facilities and its patients are considered 'medically segregated,' New Hampshire practices a form of solitary confinement on psychiatric patients. This practice seriously implicates federal civil rights provisions on discrimination on the basis of mental health disability."

*N.H. Advisory Committee to the U.S. Commission on Civil Rights, Solitary Confinement in New Hampshire, at 10 (Apr. 27, 2021).*

## PART IV

## KEY FINDING — DUE PROCESS IMPLICATIONS

Report p. 11 — Section: Civil Rights Implications: U.S. and New Hampshire Constitutions

The following passage is reproduced verbatim from the report (p. 11):

"The U.S. Constitution also highlights the right to due process in the Fifth and Fourteenth Amendments. Within the Secure Psychiatric Unit, civilly committed individuals are placed in a carceral setting and cared for by a combination of psychiatrists and correctional officers. This has implications to their rights to due process, as their actions do not warrant punishment, but instead these individuals require mental health assistance."

*N.H. Advisory Committee to the U.S. Commission on Civil Rights, Solitary Confinement in New Hampshire, at 11 (Apr. 27, 2021).*

## PART V

## KEY FINDING — AMERICANS WITH DISABILITIES ACT IMPLICATIONS

Report p. 11 — Section: Civil Rights Implications: Americans with Disabilities Act

The following passage is reproduced verbatim from the report (p. 11):

"New Hampshire is placing people [who] have never been charged or convicted with a crime, but who have a mental illness, and incarcerating them in the Secure Psychiatric Unit alongside sentenced prisoners."

*N.H. Advisory Committee to the U.S. Commission on Civil Rights, Solitary Confinement in New Hampshire, at 11 (Apr. 27, 2021) (quoting Cushing Testimony, July 2020 Briefing, p. 13).*

## PART VI

## KEY FINDING — ISOLATION CONDITIONS AT THE SPU

Report pp. 24–25 — Section: The Civilly Committed in the Secure Psychiatric Unit

The following passages are reproduced verbatim from the report (pp. 24–25):

"Focusing specifically on solitary confinement use for the civilly committed, there are cases of isolation currently practiced at the Secure Psychiatric Unit. Individuals can be placed in isolation due to threatening or assaultive behavior or for threatening to harm oneself. These patients on restricted or observation status will remain in their cell for 22 hours a day."

"'Most people start on ATC [Acute Care Status] as soon as they arrive, regardless of where they are clinically.' This means 22 hours in the cell before starting mental health treatment."

"Unlike the prison system, there are no limits on how long an individual can be placed on observational or restricted status. [This] means laws regarding length of solitary confinement do not apply to those in the Secure Psychiatric Unit, despite the practice looking very similar across facilities."

*N.H. Advisory Committee to the U.S. Commission on Civil Rights, Solitary Confinement in New Hampshire, at 24–25 (Apr. 27, 2021) (quoting Lockwood Testimony, August 2020 Briefing, pp. 14–15).*

## PART VII

## KEY FINDING — SHOWER CONDITIONS AT THE SPU AND PRISON UNITS

Report p. 7 — Section: Health Effects of Solitary Confinement: Physical Health

The following passage is reproduced verbatim from the report (p. 7):

"New Hampshire's Secure Housing Unit allows inmates under administrative or punitive segregation one hour out of cell a day. The Committee heard testimony that inmates frequently go

without showering because the showering areas are dirty, small, and the heat cannot be controlled. Without adequate exercise, inmates' physical health can degrade during solitary confinement."

*N.H. Advisory Committee to the U.S. Commission on Civil Rights, Solitary Confinement in New Hampshire, at 7 (Apr. 27, 2021) (citing Lascaze Testimony, July 2020 Briefing, pp. 10–11).*

**Significance:** This finding independently corroborates Plaintiff's account of the shower deprivation conditions on H Ward and E Ward that preceded and followed his April 9, 2020 transfer, and corroborates SPU Administrator Robinson's April 16, 2020 admission in DOC-000013 that William's hunger strike "he said was related to not having cold water for a shower."

## PART VIII

## KEY FINDING — STAFFING ISSUES AND CLINICAL FAILURES AT THE SPU

Report p. 8 — Section: Policies for Solitary Confinement: Secure Psychiatric Unit

The following passage is reproduced verbatim from the report (p. 8):

"The Committee heard testimony that there are staffing issues at the Secure Psychiatric Unit. Psychiatric staff in the Secure Psychiatric Unit has been noted to misdiagnose obvious mental health symptoms in patients and cannot always maintain psychiatric medications that may be best practice. The current budget does not allow for sufficient or appropriate staffing."

*N.H. Advisory Committee to the U.S. Commission on Civil Rights, Solitary Confinement in New Hampshire, at 8 (Apr. 27, 2021) (citing Lockwood Testimony, August 2020 Briefing, p. 15; Coulter Statement, at 14–24).*

## PART IX

## KEY RECOMMENDATION — TRANSFER SPU OVERSIGHT FROM DOC TO DHHS

Report pp. 5, 12 — Executive Summary and Recommendations

The following recommendations are reproduced verbatim from the report (pp. 5, 12):

**Executive Summary (p. 5):**

"Recommendations include moving oversight of the Secure Psychiatric Unit from the Department of Corrections to the Department of Health and Human Services; appropriately funding accreditation and staffing efforts within state and local prisons and jails; and including funding for a new psychiatric care unit outside of the New Hampshire Prison for Men's campus."

**Recommendation 1(a) (p. 12):**

"The U.S. Commission on Civil Rights should send this report to the New Hampshire General Court and issue recommendations to:

a. Adopt and pass appropriate legislation to move oversight and authority of the Secure Psychiatric Unit from the Department of Corrections to the Department of Health and Human Services during this legislative term."

**Recommendation 1(e) (p. 12):**

"Adopt and pass appropriate legislation to fund an acute psychiatric hospital outside of the prison campus. In the interim, increase staffing levels in the Secure Psychiatric Unit to ensure better patient care."

**Recommendation 2(a) (p. 12):**

"The U.S. Commission on Civil Rights should issue the following recommendations to the New Hampshire State Governor:

a. Adopt and pass an appropriate budget to fund the development of an acute psychiatric hospital outside of the New Hampshire State Prison for Men campus."

*N.H. Advisory Committee to the U.S. Commission on Civil Rights, Solitary Confinement in New Hampshire, at 5, 12 (Apr. 27, 2021).*

## PART X

## RELEVANCE TO INSTANT CASE

*Justice v. Belanger*, No. 23-cv-00308-SE-AJ

1. **LEGAL STANDARD — SECURITY OVERRIDING CLINICAL JUDGMENT:** The Committee's finding that the SPU is "a highly controlled, solitary-confinement environment, where security concerns must take precedent to clinical decisions" directly corroborates Plaintiff's central argument: that his April 9, 2020 transfer from H Ward to E Ward was a corrections decision, not a clinical one. DOC-000086 — Nurse Clayman's 10:55 AM email — confirms this sequence in real time: corrections officers announced the transfer; the psychiatrist had to be asked to conduct a clinical evaluation afterward.
2. **ISOLATION CONDITIONS CORROBORATED:** The Committee's documented findings — 22-hour lockdown on Acute Care Status, no time limits on restriction, shower access dependent on staffing — directly corroborate Plaintiff's account of conditions during his April 9–24, 2020 confinement on E Ward and F Ward, and corroborate his June 3, 2020 letter to Probate Judge Moran describing "23 hrs. a day lockdown" and "Involuntary Seclusion" (Exhibit K).
3. **SHOWER DEPRIVATION CORROBORATED:** The Committee's finding that "inmates frequently go without showering because the showering areas are dirty, small, and the heat cannot be controlled" directly corroborates Plaintiff's shower protest and hunger strike, and corroborates Robinson's April 16, 2020 admission in DOC-000013 that the hunger strike was related to cold water in the showers.
4. **INSTITUTIONAL NOTICE:** This report was based on testimony gathered in July through December 2020 — during Plaintiff's confinement. The institutional failures it documents were not unknown to Defendants at the time of the April 9, 2020 transfer; they were the subject of active federal civil rights scrutiny contemporaneous with the events of this case.

5. **WANDA DURYEA'S ADVOCACY:** The report cites Wanda Duryea's co-authored *Concord Monitor* op-ed (July 4, 2020) in footnote 6. This confirms that Duryea's public advocacy for transparency at the SPU was active during the period of the phone surveillance operation documented in Exhibit O — and that her advocacy was directed at the same institutional failures this federal civil rights body later found and documented.

---

**Authentication:** *See* Preliminary Statement § A; Declaration of Wanda Duryea, ¶ 3.

**Source:** N.H. Advisory Committee to the U.S. Commission on Civil Rights, *Solitary Confinement in New Hampshire* (Apr. 27, 2021) (United States Government publication — public domain).