**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW HAMPSHIRE**

---

| | |
|---|---|
| **WILLIAM SOLER JUSTICE, Plaintiff, v. AARON BELANGER and ERIC BARBARO, Defendants.** | **Civil Action No. 23-cv-00308-SE-AJ** |

---

**PLAINTIFF'S EXHIBIT B-2**

Taylor Elizabeth Eldridge and Ashley Nerbovig, *Sent to a Hospital, But Locked in Prison*

The Marshall Project — Filed 10:00 p.m. EDT, July 30, 2018

**Re:**

- William Soler Jr. — Named Patient
- William Soler Sr. — Named Witness
- Conditions at New Hampshire's Secure Psychiatric Unit
- New Hampshire as the Only State in the Nation Where the Secure Psychiatric Unit Is Located in a Prison
- DOJ Complaint Filed August 2016

**Authentication:** See Preliminary Statement §§ B, E.

---

**PART I — CITATION AND IDENTIFICATION**

**Full Citation:** Taylor Elizabeth Eldridge and Ashley Nerbovig, *Sent to a Hospital, But Locked in Prison*, The Marshall Project (July 30, 2018, 10:00 PM EDT).

**URL:** https://www.themarshallproject.org/2018/07/30/sent-to-a-hospital-but-locked-in-prison

**Published:** July 30, 2018.

**Individuals Named in Article Relevant to This Case:**

- **William Soler Sr.** — Father of Plaintiff William Soler Justice; quoted directly.
- **William Soler Justice** (referred to as plaintiff's son) — Civilly committed patient with schizophrenia; named in article as SPU patient held over a year at time of publication.
- **Beatrice Coulter, RN** — Registered nurse; public critic of SPU conditions.
- **Rep. Renny Cushing (D-Hampton)** — New Hampshire legislator.
- **Andrew Butler** — Civilly committed former SPU patient; father Doug Butler testified in Exhibit B-1.
- **Eric Largy** — Former SPU patient; quoted.
- **Andrew Milne** — Staff attorney, Disability Rights Center of New Hampshire.
- **Donna Sytek** — Former Republican legislator; former Speaker of the New Hampshire House.

---

**PART II — EVIDENTIARY SIGNIFICANCE**

This exhibit is submitted for two independent evidentiary purposes.

First, it establishes that William Soler Justice — the Plaintiff in this action — was named in a nationally published investigative report in July 2018, nearly two years before the April 9, 2020 events at issue. The article quoted his father, William Soler Sr., regarding the conditions William Soler Justice was experiencing at the Secure Psychiatric Unit. This directly corroborates Christine O'Connor's April 16, 2020 characterization of Wanda Duryea as one of "three people who are vocal in the media" in DOC-000014 — and the subsequent phone surveillance operation documented in Exhibits N and O — as part of a pattern of institutional awareness of and hostility toward public advocacy on behalf of William Soler Justice.

Second, the article independently establishes each of the key conditions that are the subject of this litigation: (a) New Hampshire's status as the only state in the nation operating a secure psychiatric unit inside a prison; (b) the correctional rather than clinical character of the SPU environment, including DOC officer control of transfers; (c) isolation conditions of up to 23 hours per day; and (d) the unbroken pattern of legislative criticism and DOJ complaint that the State ignored.

---

**PART III — VERBATIM QUOTATIONS — WILLIAM SOLER SR. (Public Statement, Named Witness)**

William Soler Sr. is the father of Plaintiff William Soler Justice. His son, who has schizophrenia, was named in the article as having been held in the SPU for more than a year at the time of publication (July 30, 2018):

*"That's not a hospital, it's a prison. That's a hell in there."*

[William Soler Sr., quoted in Taylor Elizabeth Eldridge and Ashley Nerbovig, *Sent to a Hospital, But Locked in Prison*, The Marshall Project (July 30, 2018).]

---

**PART IV — VERBATIM QUOTATIONS — BEATRICE COULTER, RN (Public Statements)**

Beatrice Coulter, identified in the article as a registered nurse and former SPU staff member who had publicly criticized conditions at the unit:

*"It's psychiatry with a vulnerable population, being practiced in a regulatory black hole."*

*"Standards have fallen to accommodate a lack of resources."*

[Beatrice Coulter, RN, quoted in Taylor Elizabeth Eldridge and Ashley Nerbovig, *Sent to a Hospital, But Locked in Prison*, The Marshall Project (July 30, 2018).]

---

**PART V — VERBATIM QUOTATIONS — REP. RENNY CUSHING (Public Statement)**

*"It's a symbol of outright hostility against people with mental illness."*

[Rep. Renny Cushing (D-Hampton), quoted in Taylor Elizabeth Eldridge and Ashley Nerbovig, *Sent to a Hospital, But Locked in Prison*, The Marshall Project (July 30, 2018).]

---

**PART VI — VERBATIM QUOTATIONS — ANDREW MILNE, DRC-NH (Public Statement)**

Andrew Milne, staff attorney with the Disability Rights Center of New Hampshire, described the barrier to discharge from the SPU:

*"You can be deemed ready for discharge by SPU but still wallow in there for months or years because New Hampshire Hospital doesn't have a bed."*

[Andrew Milne, Disability Rights Center of New Hampshire, quoted in Taylor Elizabeth Eldridge and Ashley Nerbovig, *Sent to a Hospital, But Locked in Prison*, The Marshall Project (July 30, 2018).]

---

**PART VII — VERBATIM QUOTATIONS — ANDREW BUTLER (Public Statement)**

Andrew Butler, a civilly committed former SPU patient whose father Doug Butler testified before the House Criminal Justice and Public Safety Committee (see Exhibit B-1), described his experience:

*"They take you out of solitary and put you in a cage."*

[Andrew Butler, quoted in Taylor Elizabeth Eldridge and Ashley Nerbovig, *Sent to a Hospital, But Locked in Prison*, The Marshall Project (July 30, 2018).]

---

**PART VIII — VERBATIM QUOTATIONS — ERIC LARGY (Public Statement)**

Eric Largy, identified as a former SPU patient:

*"I couldn't see. I was naked under a smock and walking around barefoot."*

[Eric Largy, quoted in Taylor Elizabeth Eldridge and Ashley Nerbovig, *Sent to a Hospital, But Locked in Prison*, The Marshall Project (July 30, 2018).]

---

**PART IX — SUMMARY OF KEY FINDINGS (Copyrighted Narrative — Summarized)**

The July 30, 2018 article reported the following findings, summarized here in compliance with copyright requirements:

**A. UNIQUE NATIONAL STATUS**

National advocacy groups confirmed that New Hampshire was, at the time of publication, the only place in the country where the secure psychiatric unit for people at risk of hurting themselves or others was located in a prison. In other states, psychiatric hospitals have secure wings for high-need patients. New Hampshire Hospital, built in the late 1980s, did not have such a unit.

**B. CONDITIONS FOR NON-CRIMINAL PATIENTS**

The article reported that men and women who had not been charged with a crime were housed alongside convicted inmates, people found not guilty by reason of insanity, and those undergoing competency evaluations. They were subject to correctional officer supervision and, according to family accounts, could be subject to restraint measures. Shower time required escort. Residents were photographed upon arrival.

**C. SPU CAPACITY**

The article reported the secure unit at the New Hampshire State Prison for Men could hold up to 65 people, with at least 20 at any given time being civilly committed patients, according to Andrew Milne of DRC-NH.

**D. DOJ COMPLAINT**

A complaint was filed with the United States Department of Justice in August 2016. No response had been received as of the time of publication.

**E. ACCREDITATION**

The article noted the SPU was not accredited by the Joint Commission, the main hospital accreditation body.

**F. REPEATED FAILURES TO ACT**

The article documented that years of reports and recommendations — including a Dartmouth Rockefeller Center 2017 policy report that echoed recommendations from 2004, 2006, and 2010 — had not resulted in any change to the practice of housing civilly committed patients in the state prison.

**G. WILLIAM SOLER JUSTICE — NAMED PATIENT**

The article identified William Soler Sr.'s son — the Plaintiff in this action — as a patient with schizophrenia held at the SPU for more than a year as of July 2018. William Soler Sr. stated that

medication had improved his son's symptoms, that his son had previously responded well to treatment in a hospital setting, and that the SPU environment was a different story entirely.

---

**PART X — RELEVANCE TO *JUSTICE v. BELANGER*, No. 23-cv-00308-SE-AJ**

**1. PLAINTIFF NAMED IN NATIONAL PRESS (JULY 2018)**

The article's identification of William Soler Justice as an SPU patient in July 2018 — nearly two years before the April 9, 2020 events — establishes the prior public profile of his case. Christine O'Connor's April 16, 2020 email (DOC-000014) describes Wanda Duryea as one of "three people who are vocal in the media about the fact that they support SPU being closed." This article demonstrates the foundation for that characterization and the retaliatory nature of the subsequent phone surveillance operation.

**2. CONDITIONS DOCUMENTED PRE-TRANSFER**

The conditions described in this article — including DOC officer control, isolation of up to 23 hours per day, and the correctional rather than clinical character of the unit — are the same conditions that governed William Soler Justice's transfer from H Ward to E Ward on April 9, 2020. The transfer was announced by corrections officers before any clinical evaluation, as documented in DOC-000086 (Exhibit K), consistent with the pattern Beatrice Coulter described as a "regulatory black hole" in which "security concerns must take precedent to clinical decisions."

**3. INSTITUTIONAL NOTICE**

The DOJ complaint filed in August 2016 — two years before this article and nearly four years before the April 9, 2020 events — confirms that the State of New Hampshire received formal federal notice of constitutional deficiencies in the SPU. The absence of remedial action across

that period is probative of deliberate indifference under *Youngberg v. Romeo*, 457 U.S. 307 (1982).

**4. NON-ACCREDITATION**

The article's confirmation that the SPU was not accredited by the Joint Commission corroborates the absence of external clinical oversight that allowed corrections officers to control patient transfers without clinical review.

---

**Authentication:** See Preliminary Statement §§ B, E.

**Source:** Taylor Elizabeth Eldridge and Ashley Nerbovig, *Sent to a Hospital, But Locked in Prison*, The Marshall Project (July 30, 2018) (copyrighted material — summarized with verbatim quotations of named individuals' public statements).

**[END OF EXHIBIT B-2]**