| | |
|---|---|
| **WILLIAM SOLER JUSTICE, Plaintiff, v. AARON BELANGER and ERIC BARBARO, Defendants.** | **Civil Action No. 23-cv-00308-SE-AJ U.S. District Court District of New Hampshire** ***Honorable Samantha D. Elliott, U.S.D.J. Honorable Andrea K. Johnstone, U.S.M.J.*** |

# PLAINTIFF'S EXHIBIT F

New Hampshire Advisory Committee to the U.S. Commission on Civil Rights

***Solitary Confinement in New Hampshire*** **(April 27, 2021)**

**— Legal Standards and Constitutional Framework —**

**Applicable to the Secure Psychiatric Unit**

*Authentication: See Preliminary Statement § F; Declaration of Wanda Duryea ¶ 3*

## PART I — INTRODUCTION AND SOURCE

This exhibit reproduces the legal standards and constitutional framework sections of the New Hampshire Advisory Committee to the U.S. Commission on Civil Rights, *Solitary Confinement in New Hampshire* (hereinafter "the Report" or "Advisory Committee Report"). The Report draws from the same primary source as Plaintiff's Exhibit A, but this exhibit focuses specifically on the legal, constitutional, and statutory framework sections — rather than the policy and conditions findings presented in Exhibit A.

The Advisory Committee Report was adopted **unanimously** by the Committee on **February 8, 2021**, and published on **April 27, 2021**. Public hearings were held on the following dates:

- July 20, 2020
- August 17, 2020

- September 21, 2020
- December 9, 2020

These hearings covered the period **immediately following the April 9, 2020 events at issue in the instant case**, rendering the Committee's legal findings directly probative of the constitutional and statutory standards applicable to the conduct of Defendants Belanger and Barbaro at the Secure Psychiatric Unit (hereinafter "SPU") on and after that date.

---

## PART II — FEDERAL CONSTITUTIONAL STANDARDS APPLICABLE TO THE SPU

### A. Eighth Amendment — Prohibition on Cruel and Unusual Punishment

The Advisory Committee Report identifies the Eighth Amendment to the U.S. Constitution as a controlling legal standard governing conditions at the Secure Psychiatric Unit. The Report states:

> "The Eighth Amendment to the U.S. Constitution 'prohibits cruel or unusual punishment' when looking at the consequences of isolation for some individuals, especially those with prior mental health concerns."
>
> — Report at p. 10 (Introduction, fn. 2)

The Report further notes:

> "Solitary confinement implicates the Eighth Amendment to the U.S. Constitution, which prohibits cruel and unusual punishment."
>
> — Report at p. 10 (Executive Summary, fn. 47)

**B. Fifth and Fourteenth Amendments — Due Process and Equal Protection**

The Report identifies both the Due Process and Equal Protection Clauses of the U.S. Constitution as directly applicable to civilly committed individuals held at the SPU:

> "The U.S. Constitution also highlights the right to due process in the Fifth and Fourteenth Amendments. Within the Secure Psychiatric Unit, civilly committed individuals are placed in a carceral setting and cared for by a combination of psychiatrists and correctional officers. This has implications to their rights to due process, as their actions do not warrant punishment, but instead these individuals require mental health assistance."
>
> — Report at p. 11

With respect to the Equal Protection Clause, the Report states:

> "The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution 'prohibits states from discriminating in the treatment of people based on their race.'"
>
> — Report at p. 10, fn. 1

**C. Americans with Disabilities Act — Title II**

The Report identifies Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act as federal civil rights laws directly applicable to the SPU and its civilly committed patients:

> "Title II of the Americans with Disabilities Act (ADA) and Section 504 of

> the Rehabilitation Act of 1973 (Section 504) are federal laws that protect people with disabilities, including people who are incarcerated, from discrimination on the basis of their disability including, mental health."
>
> — Report at p. 11

> "Title II of the ADA prohibits discrimination against qualified individuals with disabilities in all programs, activities, and services of public entities. It applies to all state and local governments, their departments and agencies, and any other instrumentalities or special purpose districts of state or local governments."
>
> — 42 U.S.C. § 12132; Report at p. 11

The Committee received direct testimony establishing that New Hampshire's practice at the SPU constitutes impermissible disability-based discrimination. Committee witness Representative Cushing testified:

> "New Hampshire is placing people [who] have never been charged or convicted with a crime, but who have a mental illness, and incarcerating them in the Secure Psychiatric Unit alongside sentenced prisoners."
>
> — Cushing Testimony, July 2020 Briefing, p. 13; Report at p. 11

The Report's own findings further confirm the constitutional dimension of this practice:

> "Since the Secure Psychiatric Unit is housed on the same campus as the correctional facilities and its patients are considered 'medically

> segregated,' New Hampshire practices a form of solitary confinement on psychiatric patients. This practice seriously implicates federal civil rights provisions on discrimination on the basis of mental health disability."
>
> — Report at p. 10

**D. Section 504 of the Rehabilitation Act of 1973**

The Report separately cites **§ 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)**, as an independent federal civil rights provision protecting civilly committed individuals with mental health disabilities from discrimination by recipients of federal financial assistance. *See* Report at p. 11, fn. 55. The New Hampshire Department of Corrections, as an agency receiving federal funding, is bound by § 504's non-discrimination requirements with respect to all persons in its custody or administrative control, including patients in the SPU.

---

## PART III — NEW HAMPSHIRE CONSTITUTIONAL AND STATUTORY STANDARDS

**A. NH Constitution, Part I, Article 18 — Reformative Purpose of Punishment**

The Report identifies the New Hampshire Constitution as independently limiting the use of punitive isolation, particularly with respect to individuals who have never been convicted of any crime:

> "Article 18 of the New Hampshire Constitution requires punishments to be proportional to offenses and stipulates that the purpose of punishments is 'to reform.'"
>
> — Report at p. 10, fn. 48

### B. NH Constitution, Part I, Article 33 — Prohibition on Cruel and Unusual Punishment

> "Article 33 [of the New Hampshire Constitution] bans excessive bail, fines, and cruel and unusual punishments."
>
> — Report at p. 10, fn. 49

### C. RSA 622:41 — Transfer of SPU to Department of Corrections

The Report identifies **RSA 622:41** as the statutory basis by which the Secure Psychiatric Unit was placed under the administrative control of the New Hampshire Department of Corrections. The Report confirms:

> "[T]he Secure Psychiatric Unit, formerly under the New Hampshire Department of Health and Human Services, moved to the New Hampshire Department of Corrections in 1985."
>
> — Report at p. 15 (citing Hanks Testimony and RSA 622:41)

Critically, the Report establishes that this transfer was **intended to be temporary** — made only:

> "[U]ntil a new hospital could be constructed for acute cases of mental illness."
>
> — Cushing Testimony; Report at p. 20

The temporary transfer authorized by RSA 622:41 has never been reversed, and civilly committed patients remain under correctional authority to this day — a fact the Committee found legally and constitutionally significant.

**D. RSA 622:44 — Individual Rights in the Secure Psychiatric Unit**

The Report quotes directly from the controlling New Hampshire statutory provision governing individual rights within the SPU:

> "New Hampshire State Code indicates that within the Secure Psychiatric Unit, 'rules pertaining to the population will be developed by the Commissioner of Corrections.' These rules should 'retain all individual rights unless safety or security measures necessitate further restriction.'"
>
> — N.H. Rev. Stat. Ann. § 622:44; Report at p. 11

This statutory mandate — that SPU rules *retain all individual rights* unless safety or security measures *necessitate* further restriction — is directly applicable to the April 9, 2020 transfer of Plaintiff William Soler Justice. *See* Part VII, infra.

**E. RSA 622:14 — Limits on Punitive Isolation (General Prison Population)**

The Report identifies the statutory limit on punitive isolation for the general prison population:

> "New Hampshire State Code indicates that New Hampshire allows the Commissioner of Corrections to 'punish any convict guilty of insolence or ill language to any officer of the prisons or guilty of obstinate and refractory behavior by solitary imprisonment not more than 30 days at one time.'"

> — N.H. Rev. Stat. Ann. § 622:14; Report at p. 10

**Critical Finding — No Statutory Time Limit for SPU Patients**

The Report expressly confirms that, unlike sentenced prisoners subject to the 30-day limit under RSA 622:14, civilly committed individuals in the SPU have **no statutory limit whatsoever** on the duration of isolation. Witness Lockwood testified, and the Report reflects:

*"Unlike the prison system, there are no limits on how long an individual can be placed on observational or restricted status."*
— Lockwood Testimony; Report at p. 25

This absence of a statutory time limit, as confirmed by the Advisory Committee, heightens — rather than diminishes — constitutional scrutiny under the Eighth Amendment and due process clauses with respect to the conditions imposed on Plaintiff.

---

## PART IV — CONTROLLING CASE LAW CITED IN THE ADVISORY COMMITTEE REPORT

### A. Laaman v. Helgemoe, 437 F. Supp. 269 (D.N.H. 1977)

The Advisory Committee Report cites *Laaman v. Helgemoe* as foundational New Hampshire precedent on conditions of confinement:

> "*Laaman v. Helgemoe*, 437 F. Supp. 269 (D.N.H. 1977) addressed sanitation, physical facilities, segregation, isolation, food service, medical care, mental health classifications, and many other areas around incarceration that lacked an appropriate standard of care."

> — Report at pp. 36–37

The subsequent consent decree — *Laaman v. Powell*, Civil Action No. 75-258; *Guay v. Powell*, Civil Action No. 77-256; *Sullivan v. Cunningham*, 87-301-D (D.N.H. 1990) — established judicially enforceable minimum standards for mental health care in New Hampshire correctional facilities. As testified by Representative Cushing and noted in the Report, the Decree:

> "[C]reated a minimum standard of care for mental health that was either nonexistent or substandard before the *Laaman* decision."
>
> — Cushing Testimony; Report at p. 37

**B. Holliday et al. v. Curry, NH Superior Court, Case No. 04-E-203**

The Report identifies *Holliday et al. v. Curry* as New Hampshire state court precedent specifically addressing mental health treatment and restrictive housing in the correctional context:

> The *Holliday* case addressed "mental health treatment, group therapy, medication management, and restrictive housing" and was instrumental in "creating a bare minimum access of health care and mental health treatment in secure housing units."
>
> — Report at p. 38

The resulting Court Order established minimum procedural protections, including that:

> "[A]ll those in restrictive housing have access to front end screenings for

> severe mental health needs, developmental or intellectual challenges, and suicidality."
>
> — Report at p. 38

**C. Heath v. Hanks, 2019 D.N.H. 212 (D.N.H. 2019)**

The Report cites *Heath v. Hanks* as establishing, within the New Hampshire federal district, a "clearer path in the future to transfer to another medical facility" from the SPU. As Lockwood testified and the Report confirms, this decision created a procedural mechanism — albeit limited — by which SPU patients might be transferred to a less restrictive medical setting. *See* Report at p. 26.

---

## PART V — COMMITTEE FINDINGS ON LEGAL VIOLATIONS AT THE SPU

The Advisory Committee made the following express findings regarding legal violations occurring at the Secure Psychiatric Unit. These findings are reproduced verbatim:

> "Solitary confinement has a particularly negative effect on those suffering from mental health disabilities. Since the Secure Psychiatric Unit is housed on the same campus as the correctional facilities and its patients are considered 'medically segregated,' New Hampshire practices a form of solitary confinement on psychiatric patients. This practice seriously implicates federal civil rights provisions on discrimination on the basis of mental health disability."
>
> — Report at p. 10

> "The Secure Psychiatric Unit is a highly controlled, solitary-confinement environment, where security concerns must take precedent to clinical decisions."
>
> — Report at p. 7

> "Individuals who had never committed a crime or had been sentenced by a court were now de facto inmates subject to the same rules and practices as inmates by the Department of Corrections."
>
> — Coulter Statement; Report at p. 21

> "[T]he legal firewalls that exist between civil commitments and prison sentences are non-existent in New Hampshire."
>
> — Coulter Statement; Report at p. 25

---

## PART VI — COMMITTEE RECOMMENDATION 1(A): TRANSFER SPU TO DHHS

Based on the foregoing legal findings, the Advisory Committee issued Recommendation 1(a). The following is reproduced verbatim from the Report:

> **Recommendation 1(a):** "Adopt and pass appropriate legislation to move oversight and authority of the Secure Psychiatric Unit from the Department of Corrections to the Department of Health and Human

> Services during this legislative term."
>
> — Report at p. 12

This recommendation — adopted unanimously by the Committee — reflects the Committee's conclusion that continued administrative control of the SPU by the Department of Corrections is legally untenable given the constitutional and statutory protections applicable to civilly committed individuals.

---

**PART VII — EVIDENTIARY SIGNIFICANCE**

This exhibit establishes the legal framework under which the **April 9, 2020 transfer of William Soler Justice from H Ward (Assisted Care Status) to E Ward (Acute Care Status / near-total isolation)** must be evaluated. The Advisory Committee's findings — adopted unanimously by an independent federal advisory body following public hearings conducted in the months immediately following the events at issue — confirm the following:

1. **Civilly committed patients at the SPU retain constitutional protections** under the Eighth Amendment's prohibition on cruel and unusual punishment, the due process clauses of the Fifth and Fourteenth Amendments, and the non-discrimination mandates of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973. These protections apply with full force to Plaintiff William Soler Justice, a civilly committed individual who has never been charged with or convicted of any crime.
2. **The absence of any statutory time limit on SPU isolation** — expressly confirmed by the Advisory Committee's findings, *see* Lockwood Testimony, Report at p. 25 — heightens rather than diminishes constitutional scrutiny. Where the general prison

population is protected by the 30-day cap of RSA 622:14, civilly committed patients in the SPU enjoy no such statutory protection, rendering judicial enforcement of constitutional minimums all the more essential.

3. **The statutory mandate of RSA 622:44** — that SPU rules "retain all individual rights unless safety or security measures necessitate further restriction" — means that any restriction imposed on Mr. Justice's rights, including the April 9, 2020 transfer to near-total isolation on E Ward, required documented justification based on genuine, individualized safety or security needs. Restrictions imposed for any other purpose — including retaliation for protected activity — fall outside the statutory authorization and violate both New Hampshire law and the federal constitutional standards catalogued in this exhibit.

Plaintiff respectfully submits that the Advisory Committee's findings, taken together, confirm that the conditions imposed upon Mr. Justice and the process by which they were imposed must be scrutinized against the full weight of federal and state constitutional protections applicable to civilly committed individuals — protections that, as the Committee found, are systematically disregarded within the Secure Psychiatric Unit of the New Hampshire State Prison complex.

---

| **Exhibit Identification and Authentication** | |
|---|---|
| **Exhibit Designation** | Plaintiff's Exhibit F |
| **Source Document** | NH Advisory Committee to the U.S. Commission on Civil Rights, *Solitary Confinement in New Hampshire* (April 27, 2021) |
| **Committee Adoption Date** | February 8, 2021 (Unanimous) |

| **Exhibit Identification and Authentication** | |
| --- | --- |
| **Publication Date** | April 27, 2021 |
| **Sections Reproduced** | Legal Standards and Constitutional Framework (pp. 7, 10–11, 15, 20–21, 25–26, 36–38) |
| **Authentication** | Preliminary Statement § F; Declaration of Wanda Duryea ¶ 3 |
| **Civil Action** | No. 23-cv-00308-SE-AJ (D.N.H.) |
| **Related Exhibit** | Plaintiff's Exhibit A (Policy and Conditions Findings — same source document) |

*Justice v. Belanger & Barbaro, No. 23-cv-00308-SE-AJ — Plaintiff's Exhibit F — NH Advisory Committee Legal Standards*