**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

---

| | |
|---|---|
| **WILLIAM SOLER JUSTICE, *Plaintiff,* v. AARON BELANGER and ERIC BARBARO, *Defendants.*** | **Civil Action No.: 23-cv-00308-SE-AJ Court: U.S. District Court, District of New Hampshire Filed by: Plaintiff** |

---

# PLAINTIFF'S EXHIBIT G

---

**Document Identification:**

Nate Hegyi, *"NHPR Presents: Operation Night Cat,"* New Hampshire Public Radio / Outside/In Documentary Series, Published November 5, 2025.

**Authentication:** See Preliminary Statement § G; Declaration of Wanda Duryea ¶ 13.

---

**◆ Important Copyright and Fair Use Notice**

This exhibit contains a summary and limited quotation of a published journalistic work pursuant to the fair use doctrine, **17 U.S.C. § 107**, for use in litigation. Full text of the series is available at **nhpr.org**. Quotations within this exhibit are limited to those necessary to establish evidentiary relevance and are not a reproduction of the work in its entirety. No reproduction or further distribution of quoted material beyond the scope of this litigation proceeding is authorized or implied.

## PART I — SERIES OVERVIEW

*Operation Night Cat* is a three-part investigative documentary series produced by NHPR's Document investigative journalism unit and the *Outside/In* podcast, hosted and reported by Nate Hegyi with producer Lauren Chooljian, and published November 5, 2025. The series was the product of a year-long investigation that required NHPR to file public records lawsuits, travel approximately 1,750 miles conducting field interviews, pay court record access fees, and retain an independent fact-checker. The series received recognition including a congressional unit citation letter from U.S. Senator Jeanne Shaheen.

The series consists of three episodes, each addressing a distinct phase of the investigation:

| Episode | Title | Subject Matter |
|---|---|---|
| **Episode 1** | *"Why Did the Deer Cross the Road?"* | Documents NH Fish & Game Conservation Officer Ronald Arsenault's discovery of one of the largest poaching cases in state history, centered on then-Corporal Thomas Kelley — a corrections officer at the New Hampshire State Prison for Men. |
| **Episode 2** | *"Behind the Brick Wall"* | Documents Arsenault's discovery, while investigating Kelley's phone for poaching evidence, of text messages indicating potential additional crimes occurring inside the New Hampshire State Prison for Men by corrections officers, including Kelley and |

| Episode | Title | Subject Matter |
|---|---|---|
| | | his colleagues. |
| **Episode 3** | *"A Duck's a Duck"* | Documents how multi-agency investigations — involving the FBI, IRS, U.S. Postal Service, NH Attorney General's Public Integrity Unit, and U.S. Fish and Wildlife Service — largely failed to result in criminal charges despite the evidence gathered. Tom Kelley was ultimately fired from the prison; Randy Inman retired with his pension. |

## PART II — THE CONNECTION TO THE NEW HAMPSHIRE STATE PRISON FOR MEN

---

The investigation revealed that Thomas Kelley — described in the series as then-Corporal Tom Kelley — was simultaneously engaged in alleged illegal nighttime poaching activities and employed as a corrections officer at the New Hampshire State Prison for Men in Concord, New Hampshire.

The New Hampshire State Prison for Men is the same facility that houses the Secure Psychiatric Unit (SPU) where Plaintiff William Soler Justice was confined at the time of the events giving rise to this action. The corrections officer corps documented in the NHPR series — including Kelley, Randy Inman, and others — operated within the same institutional structure, chain of command, and physical facility as Defendants Aaron Belanger and Eric Barbaro.

## PART III — KEY EPISODE 2 FINDINGS: *"BEHIND THE BRICK WALL"* (SUMMARIZED)

Episode 2 of the series documents, through text messages obtained during the poaching investigation, a pattern of alleged corrections officer misconduct at the New Hampshire State Prison for Men. The following findings are summarized from the series for evidentiary purposes. No verbatim narrative reproduction is made.

### A. Alleged Use of Violent Language and Threats of Force

The series documents text exchanges between Kelley and a fellow corrections officer discussing an inmate who had attempted escape. In those messages, Kelley wrote a message that the series characterizes as a request that the inmate be shot. A coworker responded expressing a desire for physical violence against the inmate. These messages were obtained in the course of the Fish & Game poaching investigation.

### B. Alleged Physical Assault on Inmate Devin Tappan (February 2019)

The series documents text messages in which Kelley appeared to brag about a physical altercation with inmate Devin Tappan. Per the series' account:

> *In a text dated February 25, 2019, at 8:48 p.m., Kelley asked a coworker whether they had "mash[ed]" Tappan, and later stated, "My fist is killing me."*

Tappan subsequently filed a civil lawsuit alleging that Kelley and other guards threw him to the floor and assaulted him. That lawsuit was ultimately dismissed on statute of limitations grounds.

### C. Alleged Cover-Up — Falsification of an Employee Injury Report

The series documents text messages in which Kelley allegedly coordinated with prison supervisor Randy Inman to fabricate an innocent explanation for Kelley's injured hand — specifically, the claim that Inman had accidentally stepped on Kelley's hand during a cell extraction. The series further reports that Inman filed a corresponding official "employee accident/injury report"

consistent with that fabricated account. If accurate, this conduct constitutes the falsification of official governmental records.

### D. Alleged Theft of Legal Mail — Shawn Cochrane

The series documents text messages in which Kelley allegedly discussed intercepting and taking home legal mail belonging to inmate Shawn Cochrane — an individual who was actively filing grievances and legal complaints at the time. The series reports that a photograph of six envelopes addressed to a court was sent by Kelley to a coworker. Cochrane reported that narrative statements he had written for his YDC (Youth Development Center) abuse case, mailed to his attorney from inside the prison, never arrived at their destination.

### E. Randy Inman — Prison Supervisor and Member of Poaching Ring

Randy Inman — the prison supervisor who allegedly assisted Kelley in fabricating an explanation for Kelley's injured fist — was also a member of the poaching ring that formed the original subject of the Fish & Game investigation. During the search of Inman's residence, investigators discovered evidence the series characterizes as consistent with drug distribution activity. Inman retired before disciplinary proceedings against him could be concluded and retained his full state pension.

## PART IV — INSTITUTIONAL RESPONSE

---

The series documents the official responses of state and federal institutions to the investigative findings:

- The New Hampshire Department of Justice stated that while some findings were "concerning," there was insufficient proof to bring criminal charges beyond a reasonable doubt, and that accountability had been administrative rather than criminal.
- Thomas Kelley was **fired** from his position as a corrections officer. His dismissal letter, as quoted in the series, stated that his conduct would

*"cause a reasonable person to doubt the individual's honesty, fairness, and respect for the rights of others and for the laws of the state or nation."*

- Randy Inman **retired with his pension**. No criminal charges resulted from the alleged assault on Tappan, the alleged theft of Cochrane's legal mail, or the alleged falsification of official records.
- Chris Masse — identified in the series as involved in the stolen mail text exchanges — was **demoted**.
- **No criminal charges** resulted from the alleged assault, the alleged mail theft, or the alleged cover-up of official records.

## PART V — INSTITUTIONAL CONTEXT: STAFFING AND CULTURE AT THE NH STATE PRISON FOR MEN

---

The series interviewed former longtime corrections officer Claudia Cass, who described the New Hampshire State Prison for Men as severely and chronically understaffed. She stated that she averaged approximately 100 hours per week working at the facility. Cass was fired in 2022 after warning the warden that the prison lacked sufficient staff for safe overnight operations. As of spring 2025, the series reports, more than one-third of all positions at the prison remained unfilled.

Former inmate Shawn Cochrane described interactions with Kelley in terms paraphrased by the series as follows: that Kelley would use inmates' personal information against them publicly on the housing tier, withhold or contaminate food trays, and specifically target inmates who filed grievances.

Conservation Officer Ronald Arsenault, reflecting on his discovery of the prison-related text message evidence, is quoted in the series as stating:

> *"You know, these guys are now in charge of humans, you know, and you're like,*

> *'Well, what else is going on?''*
>
> — Conservation Officer Ronald Arsenault, as quoted in *Operation Night Cat*, Episode 2, NHPR, November 5, 2025.

## PART VI — EVIDENTIARY SIGNIFICANCE TO THE INSTANT CASE: *JUSTICE V. BELANGER*

---

*Operation Night Cat* is relevant to *Justice v. Belanger*, No. 23-cv-00308-SE-AJ, on multiple independent grounds:

**1. Same Facility — Same Corrections Officer Corps.** The misconduct documented in *Operation Night Cat* occurred at the New Hampshire State Prison for Men — the same facility, the same corrections officer workforce, and the same institutional culture within which Defendants Aaron Belanger and Eric Barbaro were employed and within which the April 9, 2020 events giving rise to this action occurred. Tom Kelley and Randy Inman were corrections officers at the same prison, operating within the same tier system and the same supervisory structure as the named Defendants.

**2. Pattern of Records Suppression.** The disappearance of Shawn Cochrane's legal mail — allegedly intercepted by a corrections officer to prevent legal complaints from reaching courts — directly parallels the spoliation documented in Plaintiff's Exhibit I: William Soler Justice's April 9, 2020 Resident Request Slip to Captain Marshall, in which Plaintiff requested preservation of the audio recording of the hallway encounter with Defendant Belanger and Corrections Officer Wrenn. Captain Marshall's documented response was: *"This Audio is not available."* The pattern of institutional records suppression documented in the NHPR series is not anomalous to the instant case; it is consistent with a demonstrable institutional practice.

**3. Pattern of Retaliation Against Complaining Inmates.** The targeting of Shawn Cochrane — who was actively filing legal complaints — through mail

theft and cell searches directly parallels the retaliatory transfer of Plaintiff William Soler Justice to punitive E Ward isolation following a period during which he was actively filing and preparing legal complaints and lawsuits. *Justice v. Sununu* was filed eleven days after the April 9, 2020 events — on April 20, 2020 — further contextualizing the timing of the conduct at issue.

**4. Supervisory Tolerance of Corrections Officer Misconduct.** The series documents institutional tolerance, at the supervisory level, of corrections officer misconduct against inmates — including an alleged official cover-up executed by a supervisor (Randy Inman). Defendant Eric Barbaro, serving as a sergeant, occupied a supervisory position within the SPU corrections officer hierarchy analogous to that occupied by Inman within the general population structure. The documented supervisory conduct pattern is therefore directly relevant to the supervisory liability claims asserted against Defendant Barbaro.

**5. Corrections Officer Culture and Use-of-Force Attitudes.** The series documents text messages in which corrections officers at the NH State Prison for Men expressed violent sentiments toward inmates who attempted to escape or who filed complaints, including an explicit wish that a fleeing inmate be shot. This provides institutional context for Defendant Belanger's escalation of a conversational interaction into a lockdown order and the subsequent ward transfer of Plaintiff to punitive isolation on April 9, 2020 — conduct that, within the documented institutional culture, reflects a pattern rather than an aberration.

## PART VII — PUBLICATION DETAILS AND ATTRIBUTION

---

| | |
|---|---|
| **Publisher** | **New Hampshire Public Radio (NHPR)** |
| **Series Title** | ***Operation Night Cat*** |
| **Format** | **Three-episode investigative documentary podcast series** |

| | |
|---|---|
| **Publisher** | **New Hampshire Public Radio (NHPR)** |
| | **with full episode transcripts** |
| **Host / Lead Reporter** | **Nate Hegyi** |
| **Producer / Co-Reporter** | **Lauren Chooljian** |
| **Production Units** | **NHPR Document Investigative Journalism Unit; *Outside/In* Podcast** |
| **Publication Date** | **November 5, 2025** |
| **Availability** | **nhpr.org (full series and transcripts publicly available)** |
| **Recognition** | **Congressional unit citation letter, U.S. Senator Jeanne Shaheen** |
| **Authentication Reference** | **See Preliminary Statement § G; Declaration of Wanda Duryea ¶ 13** |

---

**Certification of Exhibit Preparer:**

The undersigned certifies that this exhibit is a good-faith summary and limited-quotation document prepared pursuant to 17 U.S.C. § 107 (fair use) for use in judicial proceedings. No portion of this exhibit is intended to substitute for or reproduce the full copyrighted work. All quoted language is attributed to the identified source and is limited to what is necessary to establish evidentiary relevance in the above-captioned matter.

**Wanda Duryea** Declarant — Declaration of Wanda Duryea ¶ 13 Exhibit Prepared: August 22, 2026

**William Soler Justice** Plaintiff, Pro Se Civil Action No. 23-cv-00308-SE-AJ

**PLAINTIFF'S EXHIBIT G** — *NHPR Operation Night Cat — Justice v. Belanger et al.*, No. 23-cv-00308-SE-AJ (D.N.H.)

Prepared pursuant to 17 U.S.C. § 107 (Fair Use — Litigation). Full series available at nhpr.org. © 2025 New Hampshire Public Radio. All rights reserved by copyright holder.