IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **WILLIAM SOLER JUSTICE, *Plaintiff,* v. AARON BELANGER and ERIC BARBARO, *Defendants.*** | **Civil Action No. 23-cv-00308-SE-AJ Hon. [District Judge] Magistrate Judge [A.J.]** |

# PLAINTIFF'S EXHIBIT I

**Document:** Secure Psychiatric Unit Resident Request Slip (IMRQ Form)

**Bates No.:** `04-09-2020_IMRQ_211692742507_SOLER`

**Date:** April 9, 2020 (Thursday) **Staff Response Date:** April 13, 2020 **Acknowledgment Date:** April 15, 2020

**From:** William Soler Justice (Resident, Ward E, Room 10) **To:** Captain Marshall (SPU Captain; non-party witness)

**Re:** Preservation of Audio/Video Recording of Hallway Incident Involving Defendant Belanger and C.O. Wrenn — April 9, 2020

**Staff Response (verbatim):** *"This Audio is not available."* — Cpt. Marshall, April 13, 2020

***Authentication:** See Preliminary Statement § I; Declaration of Wanda Duryea ¶ 11.*

## PART I — DOCUMENT OVERVIEW

This exhibit consists of a single Secure Psychiatric Unit Resident Request Slip (the "IMRQ" form), dated April 9, 2020 (Thursday), completed by Plaintiff William Soler Justice on the date of the events at issue in this litigation, directed to Captain Marshall (SPU Captain; non-party witness). The document captures the following:

1. William Soler Justice's contemporaneous, first-hand account of the April 9, 2020 hallway encounter with Defendant Belanger and C.O. Wrenn, written and submitted on the same day as the events occurred;
2. His explicit written request that the audio/video recording of that encounter be preserved for use in court proceedings; and
3. Captain Marshall's written response, dated April 13, 2020, stating in full: ***"This Audio is not available."***

This document is the earliest recorded contemporaneous account of the April 9, 2020 hallway incident in the litigation record. It was submitted before William Soler Justice had any opportunity to consult with advocates or legal counsel, and before the institutional narrative was established in subsequent staff documentation. It constitutes direct evidence of both the factual sequence of the hallway encounter and the non-preservation of potentially exculpatory audio evidence.

## PART II — VERBATIM REPRODUCTION OF THE RESIDENT REQUEST SLIP

---

*Note: The following reproduces the content of the IMRQ form (Bates No.* `04-09-2020_IMRQ_211692742507_SOLER`*) in its entirety. Original spelling, capitalization, and punctuation are preserved verbatim. Section labels have been added by counsel for organizational clarity and do not appear on the original form.*

**FORM DESIGNATION & INSTRUCTIONS (as printed on form):** This is an SPU Resident Request Slip (IMRQ form). The form instructions state: *"This form only will be used by Secure Psychiatric Unit Residents to communicate requests to members of the staff."*

### SECTION 1 — RESIDENT'S REQUEST (Dated April 9, 2020)

| TO: | CAPT. MARSHALL | DATE: | April 9, 2020 |
|---|---|---|---|
| FROM: | Soler Jr. | WARD: | E |
| FIRST NAME: | William | ROOM #: | 10 |

**REMARKS (Resident's Statement — Verbatim):**

"At our January conference you implied that the spu facility is bugged for sound and that was why you had an audio recording of the pepper spray incident between me and Logan. I am hoping that you can get the video, but preferably, the audio recording of the incident involving myself, and property c.o. Belanger with C.O. Wrenn involved, earlier today. It should reveal the lies perpetrated by those 2 hooligans. Can you please find it and save it for court purposes. Here's what happened: I was coming out of the exam room w/ c.o. Wrenn lagging behind, when Belanger crossed my path he mumbled some jibberrish about 'sister', that's when I asked him what his sister's name is. I repeated the question a few times. This is when, out-of-the-blue, Belanger ordered me to lock down because according to him I was being 'disrespectful.' He escorted me (w/Wrenn) to my cell without incident. But, I eventually got lugged UNJUSTIFIABLY."

| | |
|---|---|
| **RESIDENT'S SIGNATURE:** | ***William Soler Jr. [signed]*** |

**SECTION 2 — STAFF RESPONSE (Dated April 13, 2020)**

| DATE: | 4/13/2020 | WARD: | E-10 |
|---|---|---|---|
| TO: | RESIDENT Soler, William | FROM: | Capt Marshall |

**REMARKS (Staff Response — Verbatim):**

**"This Audio is not available"**

| | |
|---|---|
| **STAFF SIGNATURE:** | ***Cpt [Marshall's signature]*** |

**SECTION 3 — RESIDENT ACKNOWLEDGMENT (Dated April 15, 2020)**

| | |
|---|---|
| **DATE:** | **04/15/20 (Wed)** |
| **RESIDENT'S SIGNATURE:** | *William Soler Jr. [signed]* |

## PART III — CLINICAL NOTE ON WILLIAM SOLER JUSTICE'S ACCOUNT

---

William Soler Justice suffers from Schizophrenia, paranoid type, with anosognosia — a neurological feature of his diagnosis by which he lacks awareness of his own mental illness and its symptoms. (**Declaration of Wanda Duryea ¶¶ 5–6.**) His clinical records reflect fixed delusional content including beliefs about microchips and poison. However, his description of the April 9, 2020 hallway encounter — asking Defendant Belanger about "his sister," Belanger's mumbling about "sister," and Belanger's sudden lockdown order — is independently corroborated by: (a) Defendant Belanger's own statements as relayed by SPU Social Worker Christine O'Connor (**Exhibit L**), which confirm William was "asking Belanger about his sister"; (b) the sequence of events established in O'Connor's July 9, 2020 narrative (**Exhibit L**); and (c) the complete absence of any disciplinary report, clinical incident report, or use-of-force report in the record documenting threatening or assaultive behavior by William on April 9, 2020 prior to the lockdown order. The contemporaneous nature of this document — written and submitted the same day as the incident, before William had any opportunity to consult with advocates or attorneys — gives it particular probative weight as a first-hand account.

## PART IV — EVIDENTIARY SIGNIFICANCE

---

### *A. Contemporaneous First-Hand Account of the Hallway Encounter*

This document is the earliest recorded account of the April 9, 2020 hallway encounter — written and submitted on the same day the events occurred. William's account is internally consistent with O'Connor's later written narrative (**Exhibit L**), which confirms: the encounter involved William asking Belanger about "his sister"; Belanger did not want to answer questions about his sister; William was locked in on H Ward and then moved to E Ward. The core factual sequence is confirmed even by the institutional narrative — establishing that William's contemporaneous account was not fabricated after the fact.

The document's probative value is further enhanced by the following characteristics:

- It was submitted **the same day** as the incident, before any institutional narrative had been fixed in written documentation;
- It was submitted through official institutional channels (the IMRQ form system), giving it the character of a **contemporaneous business record**;
- It reflects internal consistency in the factual account — the ward and room designation (Ward E, Room 10) confirm William had already been transferred to E Ward by the time of submission, consistent with the sequence of events described therein.

### *B. Spoliation of Evidence — Audio Recording*

The SPU facility was equipped with audio surveillance capabilities. Captain Marshall's response — ***"This Audio is not available"*** — constitutes the **first institutional record of the non-preservation** of potentially exculpatory audio evidence from the April 9, 2020 incident.

This document was submitted within hours of the incident, placing the institution on **actual, written notice** that a recording existed or may have existed and was being requested for litigation purposes. Specifically:

- William's preservation request was made **on the day of the incident** — not weeks or months later;

- The request expressly referenced **court purposes**, triggering litigation-hold obligations;
- Captain Marshall's response — that the audio was "not available" — was not issued until **four days later** (April 13, 2020), suggesting the recording may have been reviewed and then allowed to expire or be overwritten;
- No explanation was ever provided as to why the audio was unavailable, whether it had been reviewed, whether it had been overwritten, or whether any steps were taken to preserve it upon receipt of William's written request.

The failure to produce or preserve this recording despite a same-day written preservation request supports an inference of spoliation under **Fed. R. Civ. P. 37(e)** and applicable spoliation doctrine. See *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (duty to preserve arises when a party reasonably anticipates litigation); *Testa v. Wal-Mart Stores, Inc.,* 144 F.3d 173 (1st Cir. 1998).

### *C. Prior Surveillance System — Basis for the Preservation Request*

William's reference to "our January conference" — in which Captain Marshall allegedly stated that the SPU facility was "bugged for sound" and that he had an audio recording of a prior pepper spray incident — establishes the following material facts:

4. **An audio surveillance system existed at the SPU** as of at least January 2020, as represented to William by Captain Marshall himself;
5. **William had independent, prior knowledge** of this surveillance system based on a direct statement from the SPU Captain — not from speculation or delusion;
6. **William's preservation request was not speculative** but was grounded in direct prior assurance from the institutional authority responsible for SPU security operations.

The non-production of any recording from April 9, 2020 — despite the existence of a documented surveillance infrastructure capable of capturing audio — requires explanation. If the system was operational in January 2020 (as Captain Marshall

represented), no evidence has been produced establishing that it was non-operational on April 9, 2020, or that its recordings were subject to automatic deletion before a preservation notice could be acted upon.

### *D. Ward Placement Confirmed on Date of Request*

The form lists William's ward as "E" and room as "10" — confirming that he had already been transferred to E Ward (Acute Care Status; near-total isolation conditions) by the time he submitted this request on April 9, 2020. This is significant for several reasons:

- It establishes that the transfer to E Ward was **completed on the same day** as the hallway encounter with Defendant Belanger — confirming the temporal proximity between the encounter and the punitive placement;
- It confirms that William submitted this request from inside E Ward isolation conditions, making the submission itself evidence of his effort to document the incident despite adverse circumstances;
- It corroborates the institutional sequence described in Exhibit L: the hallway encounter on April 9, 2020, followed by lockdown, followed by transfer to E Ward on the same date.

## SUMMARY — KEY EVIDENTIARY POINTS AT A GLANCE

---

| Evidentiary Issue | Document Evidence | Cross-Reference |
|---|---|---|
| Contemporaneous account of hallway encounter | Written & submitted April 9, 2020 — same day as incident; describes encounter with Belanger and C.O. Wrenn verbatim | Exhibit L (O'Connor narrative, July 9, 2020) |
| Audio surveillance system at SPU | William references Captain Marshall's January 2020 statement that facility is "bugged for sound" and that audio of prior incident existed | Declaration of Wanda Duryea ¶ 11 |
| Same-day written preservation request | Explicit written request for preservation of | Fed. R. Civ. P. 37(e) |

| Evidentiary Issue | Document Evidence | Cross-Reference |
|---|---|---|
| | recording "for court purposes" submitted April 9, 2020 | |
| Non-preservation / spoliation | Staff response (April 13, 2020): "This Audio is not available" — no explanation provided | Spoliation doctrine; Testa v. Wal-Mart |
| Transfer to E Ward confirmed | Form lists Ward: E, Room: 10 — submitted from E Ward on April 9, 2020 | Exhibit L; Declaration of Wanda Duryea |
| No contemporaneous use-of-force or disciplinary report | Absence of any disciplinary or incident report for William's conduct prior to lockdown on April 9, 2020 | Full institutional record; Exhibit L |
| Clinical context / corroboration | Diagnosis of Schizophrenia with anosognosia noted; factual account independently corroborated by Belanger's own statements via O'Connor | Declaration of Wanda Duryea ¶¶ 5–6; Exhibit L |

Submitted in connection with the proceedings in *William Soler Justice v. Aaron Belanger and Eric Barbaro,* Civil Action No. 23-cv-00308-SE-AJ, United States District Court, District of New Hampshire.

| | |
|---|---|
| ***Wanda Duryea*** **Declarant / Authorized Representative On behalf of Plaintiff William Soler Justice** | **Date:** ____________________ |

---

**Exhibit Designation:** Plaintiff's Exhibit I — Resident Request Slip, April 9, 2020 — *Justice v. Belanger,* No. 23-cv-00308-SE-AJ (D.N.H.)

**Bates No.:** `04-09-2020_IMRQ_211692742507_SOLER`

**Authentication:** Declaration of Wanda Duryea ¶ 11; Preliminary Statement § I.

*This document has been reproduced verbatim from the original form. Original spelling, capitalization, and punctuation have been preserved. Counsel-added organizational labels are indicated where inserted.*