| | |
|---|---|
| **UNITED STATES DISTRICT COURT DISTRICT OF NEW HAMPSHIRE ———————————————————— ——————————— WILLIAM SOLER JUSTICE,** ***Plaintiff,*** **v. AARON BELANGER and ERIC BARBARO,** ***Defendants.*** **—————————————————————————————————** | **Civil Action No. 23-cv-00308-SE-AJ** **PLAINTIFF'S EXHIBIT L** |

# PLAINTIFF'S EXHIBIT L

---

**PATIENT INMATE REQUEST SLIP**

Form SP-014(a) Rev. 01/14 | Secure Psychiatric Unit (SPU)

NH State Prison for Men | H Ward, Cell 01

Date of Request: July 6, 2020 | Response: Christina O'Connor, July 9, 2020

**Authentication:**

See Declaration of Wanda Duryea

¶

¶

13, 17

–

18; Opposition Brief

§

III.L

## PART I — SOURCE IDENTIFICATION

| | |
|---|---|
| **Document Type** | **Patient Inmate Request Slip (Form SP-014(a) Rev. 01/14) — standard form used by SPU residents to communicate with SPU staff** |
| **Date of Request** | 07/06/20 (Monday) |
| **Requester** | Soler, Jr., William — ID# 42507 — S.P.U. (Secure Psych. Unit) — H Ward, Cell 01 |
| **Original Recipient (Stated)** | Unit Supervisor / Security Lieutenant / CC/CM |
| **Responding Staff** | Christina O'Connor (Social Worker) — two separate written responses |
| **Response Dates** | First Response: Undated — Second Response: July 9, 2020 |
| **Housing Location** | H Ward (Assisted Care Status), NH State Prison for Men, Secure Psychiatric Unit |
| **Temporal Context** | Authored approximately **88 days** after the April 9, 2020 transfer that is the subject of this litigation. William was housed on H Ward (Assisted Care Status) at the time of writing, having been returned from E Ward following his brief hunger strike and transfer to the infirmary. |

## PART II — VERBATIM REPRODUCTION

*All three sections are reproduced verbatim below, preserving original punctuation, capitalization, spelling, and spacing as they appear on the source document.*

**SECTION 1 — WILLIAM SOLER JUSTICE'S WRITTEN REQUEST (July 6, 2020)**

*"Dear Christine O'Connor: In the request I wrote for Dr. Graves (dated 06/29/20 (Mon)) that you responded to you stated that 'NH Hospital asks for updates' on my progress. Who did NH Hospital, ask specifically? Was it Dr. Martin or Deb. Robinson since these are the 2 that you claim are the 2 whom are in routine contact with NH Hospital about transfers to and from the hospital? Are you sure that you want to stick with the other answer you gave on that request slip when you claimed that the reason I was moved to PUNITIVE E ward was because of a SUPPOSED 'hunger strike'? THANKS & God BLESS!!! (amen)."*

---

*Signed:* ***William Soler Jr.*** *[resident's signature]*

**SECTION 2 — O'CONNOR'S FIRST WRITTEN RESPONSE (Undated)**

*"Responses & updates are provided to NHH during the quarterly meetings on Deb Robinson. At times they call + say they have a bed. Whether it is Heather Wood, Christine, Deb Robinson it doesn't matter your behavior is what was reported. Hunger strike and talking back to officers is Not NHH ready behavior"*

---

*[Staff Signature]*

**SECTION 3 — O'CONNOR'S SECOND WRITTEN RESPONSE (Date: 7/9/20, From: Christina O'Connor)**

*"There were a number of factors that led to your move to E ward. Earlier that week you were asked to stand for count which you did but you did not have any pants on and said you had no pens, you were made ATC that night. The following day Dr. Martin [and] Barbaro met with you to discuss your being ATC, at which time you said you were on a hunger strike, but we allowed you to return to AC. After being escorted back from the treatment room you began to ask Belanger about his sister and were not providing officer Belanger the respect that he did not want to answer any questions about his sister. [Y]ou were locked in on H and then moved to E, which you continued your hunger strike which is why you were moved [to] the infirmary"*

---

*Signed:* ***Christina O'Connor*** *[staff signature]*

*Received By:* ***William Soler Jr.*** *[inmate signature]*

---

## PART III — ANNOTATION OF KEY PHRASES

---

*The following annotations identify legally significant phrases from O'Connor's July 9, 2020 response (Section 3 above) and their evidentiary import for the claims at issue.*

***"we allowed you to return to AC"***

O'Connor confirms that at the conclusion of the morning meeting with Dr. Martin and Defendant Barbaro, William Soler Justice was allowed to return to Assisted Care (AC) status. This directly establishes the two-event sequence: (1) morning meeting → return to AC; (2) separate hallway encounter with Defendant Belanger → transfer to E Ward. The morning meeting was **NOT** the basis for the transfer.

***"After being escorted back from the treatment room"***

O'Connor confirms that William was physically escorted back from the treatment room to H Ward following the morning meeting — a separate movement that preceded the hallway encounter with Defendant Belanger.

***"you began to ask Belanger about his sister"***

O'Connor confirms that William's conduct toward Defendant Belanger consisted of asking Belanger about his sister. This is consistent with William's own contemporaneous account in his April 9, 2020 Resident Request Slip (Exhibit I): *"when Belanger crossed my path he mumbled some jibberrish about 'sister', that's when I asked him what his sister's name is."*

***"were not providing officer Belanger the respect that he did not want to answer any questions about his sister"***

O'Connor confirms that the stated basis for Defendant Belanger's decision to lock William down was a subjective "respect" determination: that William was asking

questions Belanger did not wish to answer, and Belanger characterized this as disrespectful. No objective behavioral criteria are identified.

***"you were locked in on H and then moved to E"***

O'Connor confirms the sequence: locked in on H Ward → transferred to E Ward (Acute Care Status, 23-hour lockdown). O'Connor does not cite any clinical determination, threat assessment, or safety emergency as the basis for this transfer to the most restrictive ward level.

***"Hunger strike and talking back to officers is Not NHH ready behavior"***

O'Connor links William's NHH (New Hampshire Hospital) placement eligibility to compliance with SPU officers. This statement equates "talking back to officers" — an exercise of speech — with clinical unfitness for hospital transfer, revealing that NHH placement decisions were conditioned on deference to correctional authority, not clinical criteria alone.

---

## PART IV — EVIDENTIARY SIGNIFICANCE

---

### 1. Confirms the Two-Event Sequence — Direct Evidence of Factual Dispute

O'Connor's July 9 response is the only staff-authored document that narrates the full sequence of April 9, 2020 events. It confirms:

- Morning meeting with Dr. Martin and Defendant Barbaro occurred first
- William was *"allowed to return to AC"* following the morning meeting
- The hallway encounter with Defendant Belanger occurred after the return from the treatment room
- Defendant Belanger's decision to lock William down was based on a *"respect"* determination
- Transfer to E Ward followed the hallway encounter

This sequence directly contradicts any characterization of the morning meeting and the hallway encounter as a single event or as a clinical decision to transfer.

### 2. Subjective Standard for Transfer

O'Connor's narrative identifies no objective behavioral criteria, threat assessment, clinical consultation, or safety emergency that preceded the transfer to E Ward. The stated trigger was Defendant Belanger's subjective determination that William was *"not providing...the respect"* Belanger desired. A subjective "respect" determination by a corrections officer is not a legitimate clinical basis for placing a civilly committed patient in near-total isolation (Acute Care Status).

**3. NHH Placement Conditioned on Officer Deference**

O'Connor's statement *"Hunger strike and talking back to officers is Not NHH ready behavior"* reveals that SPU administration conditioned NH Hospital transfer decisions on William's compliance with correctional officers — not solely on clinical assessment. This linkage is directly relevant to O'Connor's July 10, 2020 retaliatory threat (Exhibit M): *"The more noise you make the less NHH will want to accept you."*

**4. Corroboration of Exhibit I**

The April 9, 2020 Resident Request Slip (Exhibit I) contains William's same-day account of the hallway encounter. O'Connor's July 9 response — authored approximately 91 days later — substantially corroborates that account, including the subject matter of the encounter (Belanger's sister), the involvement of Defendant Belanger, and the sequence of events (return from treatment room → hallway → lockdown → transfer).

**5. Identification of NHH Communication Chain**

O'Connor's first response identifies the NHH communication chain: *"quarterly meetings on Deb Robinson"* and calls from *"Heather Wood, Christine, Deb Robinson."* Deborah Robinson's direct role in the NHH communication chain is relevant to her parallel role in the phone surveillance campaign (Exhibit O, DOC-000010, DOC-000013) — Robinson managed both the NHH placement process and the surveillance of William's communications with patient advocate Wanda Duryea.

***Cross-Reference Note:*** *This exhibit should be read in conjunction with Exhibit I (April 9, 2020 Resident Request Slip), Exhibit M (O'Connor July 10, 2020 NHH threat), and Exhibit O (DOC-000010, DOC-000013 phone surveillance records). Together, these exhibits document the continuous course of conduct by SPU staff from April 9, 2020 through at least July 10, 2020.*

---

---

*Plaintiff's Exhibit L — Justice v. Belanger & Barbaro, No. 23-cv-00308-SE-AJ (D.N.H.) — Patient Inmate Request Slip (Form SP-014(a) Rev. 01/14), dated July 6, 2020, with responses by Christina O'Connor (undated; July 9, 2020). Authentication: Declaration of Wanda Duryea ¶¶ 13, 17–18; Opposition Brief § III.L.*