**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **WILLIAM SOLER JUSTICE, Plaintiff, v. AARON BELANGER and ERIC BARBARO, Defendants.** | **Civil Action No. 23-cv-00308-SE-AJ PLAINTIFF'S EXHIBIT M Patient Inmate Request Slip July 9–10, 2020** |

# PLAINTIFF'S EXHIBIT M

**Patient Inmate Request Slip — William Soler Justice to Christina O'Connor**
**Date of Request: July 9, 2020 | Response: July 10, 2020**
**Re: O'Connor Retaliatory Threat Linking Legal Advocacy to Denial of NHH Placement**

**Authentication:** See Declaration of Wanda Duryea ¶ 19; Opposition Brief § III.M

**Form:** SP-014(a) Rev. 01/14 | **Location:** Secure Psychiatric Unit (H Ward, Cell 01), NH State Prison for Men

---

## PART I — SOURCE IDENTIFICATION

---

| | |
|---|---|
| **Document Type** | **Patient Inmate Request Slip (Form SP-014(a) Rev. 01/14) — the standard form used by SPU residents to communicate with SPU staff.** |
| **Date of Request** | 07/09/20 (Thursday) |
| **Requester** | Soler, Jr., William — ID# 42507 — S.P.U. (Secure Psych. Unit) — H Ward, Cell 01 |
| **Recipient (Initial)** | Christine O'Connor (Social Worker) — designated by name on the response |

| | |
|---|---|
| **Document Type** | **Patient Inmate Request Slip (Form SP-014(a) Rev. 01/14) — the standard form used by SPU residents to communicate with SPU staff.** |
| | line |
| **Responding Staff** | Chrostie O'Connor — Date: 7/10/20 |
| **Unit / Housing** | Secure Psychiatric Unit (SPU) — H Ward, Cell 01 — NH State Prison for Men |
| **Contextual Note** | This Patient Inmate Request Slip was authored on July 9, 2020 — three days after the Patient Inmate Request Slip constituting Exhibit L, and one day after O'Connor's July 9, 2020 response in Exhibit L. It was authored approximately 91 days after the April 9, 2020 transfer. |

---

## PART II — VERBATIM REPRODUCTION

---

*All text below is reproduced verbatim from the original Patient Inmate Request Slip, Form SP-014(a) Rev. 01/14. Original punctuation, capitalization, spelling, and spacing are preserved exactly as written. Bracketed insertions indicate words supplied by undersigned counsel for legibility where the original form's printed fields supply context.*

### Section 1 — William Soler Justice's Written Request (July 9, 2020)

> **Verbatim — Inmate/Resident Written Request**
>
> "Dear Christine O'Connor: Back on Thurs., April 09th, 2020, how many weeks worth of meals did I supposedly miss BEFORE Dr. Wendy Martin and/or Sgt. Barbaro have me lugged (sent back) to PUNITIVE E ward for my supposed 'hunger strike'? Was the real reason I was lugged because of the incident that same day with HOOLIGAN correctional officers, Belanger, Wrenn, and Barbaro? Which of the spu's 2 experts (Dr. Garrett Graves or Dr. Wendy Martin) made NH Hospital 'aware' of my supposed hunger strike, thereby, influencing NH

> Hospital's decision to pass me over on the waiting list to go to the hospital (enquiring minds want to know whether it was Graves and/or Martin). In your presence, mines and silent as a mouse 'gay' correctional ofc. (c.o.) Morrisette, Dr. Graves seemed agitated that I brought up the fact that my head and fingers tremble and twitch from time to time for the past 3 or 4 years. Christine, did you share that sense earlier today? THANKS & God BLESS! P.S.- O'Connor, these questions are not going away anytime soon-FYI"
>
> *Signed: William Soler Jr. [inmate signature]*

**Section 2 — O'Connor's Written Response (Date: 7/10/20)**

> **Verbatim — Staff Response — From: Christine O'Connor — Date: 7/10/20**
>
> "The general adversarial [stance] you have with SPU is what is concerning for NHH. A person who is stable is not consistently accusing his providers of wrongdoing. The more noise you make the less NHH will want to accept you. That is your choice. Your request slips should address one issue per request. I don't know what you are talking about when you [ask] if I share the [same] sense earlier today? That may [be about] head + fingers tremble!"
>
> *Signed: Christine O'Connor [staff signature]*
>
> *Received By: William Soler Jr. [inmate signature]*

---

## PART III — ANNOTATION: THE RETALIATORY THREAT

---

The following annotations address each operative phrase in O'Connor's July 10, 2020 written response. Each annotation identifies the legal significance of O'Connor's language in the context of a First Amendment retaliation claim.

***"The general adversarial [stance] you have with SPU is what is concerning for NHH."***

O'Connor characterizes William's advocacy — his submission of Resident Request Slips challenging the basis for his E Ward transfer, asking questions about his care, and requesting information about the NHH placement process — as "adversarial." Filing grievances and requesting information are protected First Amendment activities. O'Connor's characterization of protected advocacy as an institutional "concern" for NHH placement constitutes adverse action in response to protected speech.

---

***"A person who is stable is not consistently accusing his providers of wrongdoing."***

O'Connor equates William's exercise of his right to file complaints and challenge institutional decisions with evidence of mental instability. This framing pathologizes legitimate advocacy: it converts the submission of Resident Request Slips (the SPU's designated complaint mechanism) into evidence that William is clinically unready for hospital transfer. The logical consequence is that any challenge to institutional decisions becomes self-defeating for the patient who raises it.

---

***"The more noise you make the less NHH will want to accept you. That is your choice."***

**This is the retaliatory threat.** O'Connor directly links the volume of William's complaints ("noise") to the likelihood of NHH acceptance. The threat is explicit: exercise your rights, and the institution will use its control over the NHH placement process against you. The phrase "That is your choice" places the burden of anticipated retaliation on William himself — characterizing the institutional threat as a personal choice he is making. *Compare:* Declaration of Wanda Duryea ¶ 19 (O'Connor's threat that William would be denied hospital placement if he continued to raise concerns).

---

***"Your request slips should address one issue per request."***

An administrative directive that does not respond to any of the substantive questions raised. This non-response to the substance of William's questions — including his specific inquiry about which physician communicated information to NHH about his supposed hunger strike — is consistent with the pattern of non-disclosure documented in the phone surveillance emails (Exhibit O).

***"That may [be about] head + fingers tremble!"***

O'Connor appears to dismiss William's question about Dr. Graves's reaction to information about William's neurological symptoms (head and finger tremors) as a potential medication side effect. This dismissal of William's report of physical symptoms — in a document that functions primarily as a retaliatory threat — further illustrates O'Connor's approach to William's communications: characterizing legitimate clinical questions as evidence of instability.

---

---

## PART IV — LEGAL SIGNIFICANCE

---

### A. First Amendment Retaliation — Adverse Action

The retaliatory threat in O'Connor's July 10 response satisfies the adverse action element of a First Amendment retaliation claim: a statement by a person with authority over a material benefit (NHH placement) that exercise of protected conduct (filing complaints, asking questions) will result in loss of that benefit. *Compare Thaddeus-X v. Blatter,* 175 F.3d 378 (6th Cir. 1999) (adverse action is action that would deter a person of ordinary firmness from continuing to exercise protected rights); *Vega v. Miller,* 273 F.3d 460 (2d Cir. 2001).

### B. NHH Placement as Material Interest

NHH (New Hampshire Hospital) placement would move William Soler Justice from 23-hour lockdown at the SPU to a clinical treatment environment. As a civilly committed patient under RSA 171-B, William has a constitutionally protected liberty interest in conditions of confinement not more restrictive than reasonably required for treatment. O'Connor's explicit linkage of complaint volume to NHH placement constitutes conditioning of a constitutionally significant interest on silence.

### C. Corroboration by Exhibit O

The phone surveillance emails (Exhibit O) document the parallel institutional campaign: DOC-000014 (O'Connor, April 16, 2020) asking whether to "limit his phone contact with Wanda Duryea"; DOC-000029 (O'Connor, May 7, 2020): "We

have asked to have the phone calls pulled so that we can hear the content of the calls"; DOC-000028 (Robinson, May 7, 2020): "I remain concerned about the impact her advocacy is having on his recovery." O'Connor's July 10 retaliatory threat is consistent with an institutional policy of using NHH placement as a lever to suppress advocacy.

**D. Declaration of Wanda Duryea ¶ 19**

This exhibit directly authenticates the events described in the Declaration of Wanda Duryea at paragraph 19, which documents O'Connor's written threat that William would be denied hospital placement if he continued to raise concerns about his treatment.

**E. Pathologizing Protected Conduct**

O'Connor's statement that "A person who is stable is not consistently accusing his providers of wrongdoing" creates a closed institutional logic: a patient who complains about mistreatment is, by definition, demonstrating instability; a patient who does not complain is demonstrating stability and NHH readiness. Under this logic, a civilly committed patient cannot exercise any legal right to challenge institutional decisions without simultaneously providing evidence that he is unfit for transfer. This circular reasoning is precisely what the Due Process rights of civilly committed persons are designed to prevent. *See Youngberg v. Romeo,* 457 U.S. 307 (1982).

---

## EXHIBIT SUMMARY

| Element | Detail |
|---|---|
| Exhibit Designation | Plaintiff's Exhibit M |
| Document Title | Patient Inmate Request Slip (Form SP-014(a) Rev. 01/14) |
| Plaintiff / Requester | William Soler Justice (Soler, Jr., William) — ID# 42507 |
| Respondent | Christine O'Connor, Social Worker, SPU |
| Date of Request | July 9, 2020 |

| **Element** | **Detail** |
|---|---|
| Date of Response | July 10, 2020 |
| Location | Secure Psychiatric Unit, H Ward, Cell 01, NH State Prison for Men |
| Case | *Justice v. Belanger,* Civil Action No. 23-cv-00308-SE-AJ (D.N.H.) |
| Authentication | Declaration of Wanda Duryea ¶ 19; Opposition Brief § III.M |
| Primary Legal Theory | First Amendment Retaliation — Adverse Action; Due Process — Conditioning of Liberty Interest on Silence |
| Key Cases Cited | *Thaddeus-X v. Blatter,* 175 F.3d 378 (6th Cir. 1999); *Vega v. Miller,* 273 F.3d 460 (2d Cir. 2001); *Youngberg v. Romeo,* 457 U.S. 307 (1982) |
| Related Exhibits | Exhibit L (prior Request Slip, July 6, 2020); Exhibit O (phone surveillance emails) |